UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| QUINCE A. FRANCIS, JR., | : Case No. 3:11-cv-01344 (MPS) |
| *Now known as* King Frank Edward Bolt, | : |
|     Plaintiff, | : |
| | : |
|     v. | : |
| | : |
| ROBERT HATHAWAY, | : |
| SCOTT PARKER, | : |
|     Defendants. | : April 7, 2015 |

## RULING ON MOTION FOR SUMMARY JUDGMENT

**I.     Introduction**

Pro se plaintiff Quince A. Francis, Jr.,[1] brings this civil rights action under 42 U.S.C. § 1983 against defendants Robert Hathaway and Scott Parker, who are officers with the Hartford Police Department, alleging that the defendants violated his constitutional rights under the Fourth and Fourteenth Amendments while arresting and detaining him September 6-7, 2010. Specifically, Mr. Francis alleges that the defendants used excessive force and denied him adequate medical treatment for his injuries while he was in custody. The defendants have moved for summary judgment on those claims. As set forth herein, the Court denies summary judgment as to the excessive force claim but grants summary judgment as to the denial of medical treatment claim.

**II.    Legal Standard for Summary Judgment**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] During the course of this litigation, the plaintiff informed the Court that he had changed his name to King Frank Edward Bolt. For simplicity, and because the suit was filed under the name Quince Francis and many of the documents in the record refer to that name, the Court refers to the plaintiff as Mr. Francis throughout this ruling.

Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). "In looking at the record, we construe the evidence in the light most favorable to the nonmoving party and draw all inferences and resolve all ambiguities in favor of the nonmoving party." *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) (citations omitted).

**III.     Facts**

The following facts are taken from the evidence in the record construed in the light most favorable to the plaintiff:

On September 6, 2010, at 11:55pm, Hartford Police Department officers Robert Hathaway, John Marvin,[2] and Scott Parker were dispatched to 50 South Street, Hartford, based on a report by a neighbor that a resident of 50 South Street was being beaten by her husband. Defs.' Exh. 5 (Parker Aff.) ¶ 4; Defs.' Exh. 6 (Hathaway Aff.) ¶ 4. The officers arrived at 50

---

[2] Officer Marvin was previously a defendant in this action. On June 15, 2012, the Court received a Suggestion of Death for Officer Marvin. On February 1, 2013, he was dismissed from the case.

South Street between 12:00 midnight and 12:05am. Parker Aff. ¶ 5; Hathaway Aff. ¶ 5. They were all wearing police uniforms. Parker Aff. ¶ 7; Hathaway Aff. ¶ 7. On the front porch of the house, the officers spoke with Ms. Amy Malachi Francis, who reported that she had been married to Mr. Francis for less than a year and had obtained a protective order against him. Parker Aff. ¶ 10; Hathaway Aff. ¶ 9. Ms. Francis reported that Mr. Francis had come to 50 South Street at around 11:45pm that night, asked to speak with her and then asked to use her telephone, and when she refused, they argued and Mr. Francis slapped her and held a knife to her neck and nose. Parker Aff. ¶ 11-12; Hathaway Aff. ¶ 10-11. The officers searched the house, starting in the third-floor apartment, and eventually found Mr. Francis in the basement of the house. Parker Aff. ¶ 14-16; Hathaway Aff. ¶ 14-15.

The parties offer conflicting evidence about what happened subsequently. Mr. Francis offered the following version of events in the affidavit that he submitted to the Court[3]:

When entering the basement, the officers did not announce themselves as law enforcement. Francis Aff. ¶ 6-7. The officers ordered Mr. Francis to come out with his hands up, and he complied. *Id.* ¶ 8. Officer Marvin shot Mr. Francis with a taser, striking his shirt. *Id.* ¶ 9.

---

[3] In their reply brief, the defendants argue that all the facts presented in their D. Conn. L. R. 56(a)(1) statement should be deemed admitted, as Mr. Francis has not filed a proper L. R. 56(a)(2) statement in response, expressly denying or admitting each of the seventy numbered paragraphs in the defendants' statement. It is true that Mr. Francis has not complied with L. R. 56(a)(2); his Statement of Disputed Factual Issues contains a short list of disputes described in general terms and not tied to the specific claims made in the defendants' L. R. 56(a)(1) statement. On that basis, the Court has the authority to deem the defendants' claims admitted. *See, e.g.*, *Gipson v. Carlin*, No. 3:09-CV-1696 RNC, 2011 WL 3930280, at *1 n.2 (D. Conn. May 16, 2011). But Mr. Francis is a pro se plaintiff and currently incarcerated. Where a pro se plaintiff has failed to submit a L. R. 56(a)(2) statement but has "submit[ted] affidavits and other evidence," the Court has the discretion to "take the less drastic approach and merely accept the defendant[s'] material facts as true except to the extent [the plaintiff] denied these facts with a basis for such denial." *Santiago v. Gen. Dynamics Elec. Boat Div.*, No. CIV.A. 3:04-CV-2062 (JCH), 2006 WL 3231413, at *1 n.1 (D. Conn. Nov. 7, 2006); *see also, e.g.*, *Wilks v. Elizabeth Arden, Inc.*, 507 F. Supp. 2d 179, 185-86 (D. Conn. 2007) ("In deference to the Plaintiff's *pro se* status, the court, to the extent possible, will regard the Plaintiff's version of the facts contained in his opposition (excluding arguments or conclusory statements) as responsive to the Defendant's Local Rule 56(a)(1) Statement . . . [and] deem admitted all facts set forth in the Defendant's compliant Local Rule 56(a)(1) Statement that are supported by the evidence and not refuted by the Plaintiff's opposition memorandum."). The Court regards Mr. Francis's affidavit as refuting many of the defendants' factual claims about the events that Mr. Francis himself witnessed; however, the Court deems admitted all facts in the defendants' L. R. 56(a)(1) statement that are not refuted by Mr. Francis's affidavit or that Mr. Francis would have no basis in personal knowledge to refute.

3

Mr. Francis pulled the taser barb off his shirt, and Officer Marvin shot the taser again, this time striking Mr. Francis on the chest. *Id.* ¶ 9-10. The officers yelled orders at Mr. Francis, and then tackled him to the ground. *Id.* ¶ 12. Officers Marvin and Parker grabbed his legs, while Officer Hathaway slammed his face and head against the basement stairs multiple times. *Id.* ¶ 13. As Officers Hathaway and Parker were "beating" Mr. Francis, they told him to stop resisting, but Mr. Francis was not resisting or struggling. *Id.* ¶ 14-15. Mr. Francis had no weapons or other objects in his possession at that time. *Id.* ¶ 16.

Mr. Francis was escorted to a police cruiser, and while in the cruiser, he banged on the inside of the car to alert the officers to the fact that he was in need of medical attention. *Id.* ¶ 18. Officers Marvin and Hathaway then approached the cruiser, and Mr. Francis told them that he needed medical attention. *Id.* ¶ 20-21. The officers opened the doors and sprayed Mr. Francis with mace. *Id.* ¶ 22. At 12:22am, the officers radioed dispatch for an ambulance. Parker Aff. ¶ 29. The ambulance arrived at 12:35am and gave Mr. Francis saline for his eyes but no other treatment. Francis Aff. ¶ 23. He was then transported to a police station on Jennings Road, where he was not "processed," fingerprinted, photographed, or given the opportunity to make a phone call. *Id.* ¶ 24. He was placed in a cell in the rear of the station, and he remained cooperative. *Id.* ¶ 25. He was then transferred to station on Lafayette Street. *Id.* ¶ 26. At 3:45am, he told the judicial marshals that he needed medical treatment. *Id.* He was photographed by a marshal and then sent away in another police cruiser at 5:25am. *Id.* ¶ 27. He was taken to St. Francis Hospital at 114 Woodland Street, where he underwent MRI and CT scanning. *Id.* ¶ 28. At 11:15am, he was taken back to the Lafayette Street station. *Id.* ¶ 30.

Police records from the Lafayette Street police station show that Mr. Francis was received in the early morning of September 7, 2010, and that he complained of chest burns from

a taser and was moved to 114 Woodland Street. Pl.'s Exh. 1. Medical records from St. Francis Hospital show that Mr. Francis was received in the early morning of September 7, 2010. Pl.'s Exh. 2 at 1. Mr. Francis reported pain "rated 10/10" in the center of his chest, where he was tased. *Id.* He also reported being kicked and punched in the head. *Id.* Medical staff noted "2 puncture wounds to the right side of the chest from the barbs from the tazer [sic]" and "an abrasion to the left check [sic] bone and a lump to the right side of the forehead" but "no bleeding and no drainage." *Id.* at 2. Staff also noted that Mr. Francis was "awake, alert and cooperative with an affect that is calm and appropriate." *Id.* Mr. Francis reported having been pepper sprayed and having a "10/10 headache." *Id.* at 3. Records show that Mr. Francis underwent CT scanning and was released to police custody several hours later with a prescription for Motrin 600mg after his condition was deemed "satisfactory." *Id.* at 5-6.

Mr. Francis claims that the officers violated his Fourth and Fourteenth Amendment rights in connection with their use of force to arrest him and the conditions that he experienced while detained in police custody after the arrest. Am. Compl. at 3. He seeks money damages of $50,000 per defendant, in addition to damages for the medical bills resulting from the defendants' actions. *Id.* at 2.

**IV.   Discussion**

    **A.   Excessive Force Claim**

As set forth below, there are genuine and material factual disputes regarding the reasonableness of the defendants' use of force against Mr. Francis. The Court will therefore deny summary judgment on that claim.

"Determining whether a use of force was reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Terebesi v.*

5

*Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (quotation marks and citations omitted) (citing *Graham v. Connor,* 490 U.S. 386 (1989)). "We ask whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* "In doing so, we consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* And because the officers have asserted a defense of qualified immunity, Mr. Francis's action for excessive force will succeed only if "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted," which "depends upon whether the law put the officer on notice that his conduct would be clearly unlawful." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003).

The officers did have cause to believe that Mr. Francis had committed a crime—including a serious assault—based on what Ms. Francis had reported. And there is no dispute that only Officer Marvin, who is no longer a party in the case, tased Mr. Francis (although a fact-finder might infer that Officers Hathaway and Parker had an opportunity to intervene). But there are still genuine disputes of material fact surrounding the defendants' use of force. Mr. Francis claims that he was cooperative, did not resist or struggle, and complied with orders to show his hands when the officers entered the basement; the officers dispute this. Defs.' L.R. 56(a)(1) Statement ¶ 26-28. Mr. Francis claims that Officers Hathaway and Parker beat him, that Officer Parker held his legs while Officer Hathaway repeatedly slammed his head into the stairs, and that Officer Hathaway sprayed him with mace after he had already been placed in a police vehicle and was asking for medical attention; the officers dispute this. *Id.* ¶ 60-63.

The defendants argue that Mr. Francis's affidavit does not create any genuine disputes because it is "self-serving and conclusory," but this argument is without merit. Defs.' Br. at 5-6. Although a party's affidavit that is not based on personal knowledge, *United States v. Carlin*, 948 F. Supp. 271, 276 (S.D.N.Y. 1996), or that "contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment," *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995), Mr. Francis's affidavit is not contradicted by prior testimony and sets forth specific facts of which Mr. Francis has personal knowledge. Further, the medical records submitted by Mr. Francis provide additional support for some of his allegations.

A reasonable fact-finder, crediting Mr. Francis's testimony and construing the evidence in the light most favorable to him, could find that the defendants' use of force was objectively unreasonable under the full circumstances and that the unlawfulness of the defendants' actions would have been clear to a reasonable officer. The Court therefore DENIES summary judgment as to Mr. Francis's claim that the defendants used unreasonable force against him.

### B.      Denial of Medical Treatment Claim

The defendants also move for summary judgment on the issue of whether they denied Mr. Francis adequate medical treatment for his injuries, in violation of the Due Process Clause of the Fourteenth Amendment. Mr. Francis has abandoned this claim. In his Statement of Disputed Factual Issues, he does not list any factual disputes related to a denial of adequate medical treatment, and in his brief in opposition to the motion for summary judgment, he argues for the existence of genuine disputes of material fact only with regard to his "use of force claim." Pl.'s Br. at 2. But even if Mr. Francis had not abandoned this claim, the defendants would be entitled to summary judgment.

"The Due Process Clause . . . require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). "The due process rights of a pretrial detainee are violated if a custodial official 'denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need.'" *Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 190 (D. Conn. 2010) (quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). "The first inquiry is whether the [detainee] was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).[4] "[O]fficials who act reasonably" in response to the need for medical treatment are not liable. *Id.* "The obligation of the police to provide necessary medical treatment upon request by a detainee or based upon the obvious need for treatment is satisfied when the police summon medical assistance; they have no duty to provide that assistance themselves." *DiGennaro v. Town of Gates Police Dep't*, No. 07-CV-6426 CJS, 2013 WL 3097066, at *16 (W.D.N.Y. June 18, 2013), (quoting *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 414 (E.D.N.Y. 2011)); *see also Jackson v. City of New York*, 939 F. Supp. 2d 235, 260 (E.D.N.Y. 2013) (granting summary judgment where "[p]laintiff admits an ambulance transported her from the precinct to the hospital, where she was treated for injuries sustained during her arrest"); *Zipoli v. Caraballo*, 603 F. Supp. 2d 399, 404-05 (D. Conn. 2009) (granting summary judgment under similar circumstances).

There is no dispute that the officers radioed for an ambulance at 12:22am, a mere fifteen to twenty minutes after they had originally arrived at 50 South Street. There is also no dispute

---

[4] *Salahuddin* dealt with medical care to a prisoner and the requirements of the Eighth Amendment, but those requirements are the same as the requirements of the Fourteenth Amendment with regard to pretrial detainees. *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment . . . .").

8

that the ambulance arrived quickly, at 12:35am, and medical personnel treated Mr. Francis's eyes with saline. Although Mr. Francis says that he received no treatment at that time for his tasing injuries, there is no evidence suggesting that the defendants prevented Mr. Francis from receiving treatment for those injuries from the medical personnel who arrived in the ambulance.

Because Mr. Francis has abandoned his claim under the Due Process Clause, and in any event, there is no genuine dispute as to whether the defendants deprived Mr. Francis of adequate medical treatment, summary judgment is GRANTED as to that claim.

## V.     Conclusion

For the reasons above, the [50] Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. The case proceeds as to the plaintiff's claim for excessive force against defendants Robert Hathaway and Scott Parker. The Clerk is directed to appoint counsel for the plaintiff.

**SO ORDERED** this 7th day of April 2015, at Hartford, Connecticut.

>        /s/
> Michael P. Shea
> United States District Judge